703 P.2d 934

Esther O. GONZALEZ, a single woman, and Neil E. Weinbrenner and Eddie F. Weinbrenner, his wife, Plaintiffs-Appellees,

v.

Thomas J. GONZALEZ, Defendant-Appellant.

Esther O. GONZALEZ, Plaintiff-Appellee,

v.

Thomas GONZALEZ, Defendant-Appellant.

No. 7838.

Court of Appeals of New Mexico.

July 2, 1985.

Larry Ramirez, Weinbrenner, Richards, Paulowsky & Sandenaw, P.A., Las Cruces, for plaintiffs-appellees.

Frederick H. Sherman, Sherman & Sherman, P.C., Deming, Sarah M. Singleton, Singleton Law Offices, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant Thomas J. Gonzalez appeals from the trial court's order, entered in a consolidated proceeding, that found a 1969 judicial sale valid and quieted plaintiffs' title on the basis of that sale. At the sale, plaintiff Esther O. Gonzalez, defendant's former wife, had acquired his fractional interest in real property, and she subsequently transferred part of that interest to plaintiffs Neil and Eddie Weinbrenner. We reverse and remand for further proceedings.

Defendant contends that the arrearages should have been reduced to a lump sum judgment before execution issued and that in the absence of such a judgment the sale was void. *See Jackson v. Sears, Roebuck & Co.*, 83 Ariz. 20, 315 P.2d 871 (1957). Defendant also contends that the sale was void because he received insufficient notice to satisfy constitutional due process requirements. *See Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). We hold that the existence of genuine issues of material fact precluded summary judgment in favor of plaintiffs. We also hold that prior to ruling on defendant's motion to vacate the sale, the trial court should have held an evidentiary hearing with respect to his due process claim.

**FACTS**

The land in question originally belonged to Josefa Gonzalez, defendant's mother. After she died, it was held in co-tenancy by her children. One of the children, by agreement, collected rents, paid expenses, and distributed net profits as directed by his co-tenants.

Mr. and Mrs. Gonzalez had been divorced in 1958, prior to his mother's death. An amended final decree had been entered in 1959; it ordered defendant to pay child support of $100 per month. Defendant was ordered to make the payments to the court clerk. The record indicates that defendant did not make regular child support payments; at the hearing before the trial court, Mrs. Gonzalez introduced evidence that defendant had made payments of less than $1200 by 1969.

In June 1969, alleging that defendant was indebted for $10,650.25 in past due child support, Mrs. Gonzalez obtained a writ of garnishment and received $417.49 due defendant from his mother's estate. Later the same year, Mrs. Gonzalez ob-

tained an alias writ of execution against his one-eighth interest in the land. A notice of sale was published for four consecutive weeks in the Las Cruces Sun-News, and the notice of levy was recorded in the two counties in which the land lies. On December 9, 1969, Mrs. Gonzalez purchased defendant's interest for $7700; a $3252.76 deficiency remained after costs. Mrs. Gonzalez subsequently conveyed a portion of her interest to Mr. and Mrs. Weinbrenner.

On March 15, 1982, defendant moved to vacate or set aside the sale. He claimed that the execution was not valid, because it was not preceded by judgment for the stated arrearages, and also that the court lacked jurisdiction to order a sale because he was not given adequate notice. He indicated that he had made payments that had not been credited, including the sum garnished.

Plaintiffs filed a quiet title action against defendant on March 16, 1982 concerning the same land. Defendant answered and moved for summary judgment, again asserting that the judicial sale was void. Plaintiffs moved for summary judgment.

The trial court consolidated both actions with an earlier suit for partition brought by plaintiffs against the heirs of Josefa Gonzalez, in which plaintiffs moved the court to enforce a purported settlement agreement. Defendant also moved for summary judgment in that action, on the basis that the sale was void.

At the hearing held after consolidation, plaintiffs introduced evidence by affidavit that defendant had actual knowledge after December 1969 that plaintiffs claimed title to the land, and that letters from the Dona Ana County Sheriff and Mr. Weinbrenner, then serving as Mrs. Gonzalez' lawyer, gave him notice of execution and the pending sale. Defendant stated by affidavit, however, that the last pleading he received in the divorce action was the amended final decree and that he received no pleadings relating to and had no knowledge of the execution and sale.

On May 3, 1984, the trial court granted plaintiffs' motion for summary judgment.

On the same day, by the same order, the trial court also denied defendant's motion to vacate the judicial sale and his various motions for summary judgment. In addition, the court found the settlement agreement could not be enforced.

Defendant appealed the grant of summary judgment and the denial of his motion to vacate the sale. Although he applied for an interlocutory appeal with respect to the suit for partition, this court denied the application.

## VALIDITY OF AN EXECUTION PRIOR TO JUDGMENT FOR ARREARAGES BASED ON A DECREE PROVIDING PERIODIC CHILD SUPPORT PAYMENTS

There is a conflict among those jurisdictions that have considered defendant's first contention: whether arrearages in child support payments, previously decreed, must be reduced to judgment before a valid execution may issue. *Cullinan v. Cullinan*, 226 N.W.2d 33 (Iowa 1975). In some jurisdictions, each installment is in itself a judgment as it falls due, unless the trial court provides otherwise in fixing the periodic support payments. *See id. See also Di Corpo v. Di Corpo*, 33 Cal.2d 195, 200 P.2d 529 (1948); *Hedgecorth v. Hedgecorth*, 463 S.W.2d 596 (Mo.App.1971). In other jurisdictions, an order for periodic support payments must be reduced to a lump sum judgment before execution may issue. *See Roach v. Roach*, 164 Ohio St. 587, 132 N.E.2d 742 (1956). Such a rule is consistent with the more general principle, followed in some jurisdictions, that before execution can issue on a judgment, the judgment must be for money, and the specific sum of money due and the identity of the person to whom it is payable must be fixed. *See McKay v. Coca-Cola Bottling Co. of Santa Barbara*, 110 Cal.App.2d 672, 243 P.2d 35 (1952). A jurisdiction that follows the more general principle, however, may make an exception for a decree that orders periodic support. In California, for example, a creditor spouse may obtain a writ of execution for accrued installments upon an ex parte showing of an unpaid

sum. *See In re Marriage of Wyshak*, 70 Cal.App.3d 384, 138 Cal.Rptr. 811 (1977); *In re Marriage of Crookshanks*, 41 Cal. App.3d 475, 116 Cal.Rptr. 10 (1974), *appeal dismissed*, 420 U.S. 985, 98 S.Ct. 1418, 43 L.Ed.2d 667 (1975). This result appears to be the majority rule. *See generally* 27B C.J.S. *Divorce* § 321(8) (1959).

 In the absence of relevant provisions in the decree, the answer to the contention depends on legislative intent. *Cullinan v. Cullinan; Roach v. Roach.* *Cf. Jackson v. Sears, Roebuck & Co.* (statute and rule permitted execution to issue only after formal entry of the judgment on the docket). Our statutes and cases indicate that a creditor spouse may obtain a writ of execution based on a decree for child support without first proceeding to reduce arrearages to judgment.

The legislature has provided for enforcement of periodic support payments by recognizing a lien that attaches upon filing the decree. The relevant specific statutory authority then and now provides:

> In case a sum or sums of money is allowed to the child or children by the decree for the support, education or maintenance of such child or children, *such decree shall become a lien* on the real estate of the party which must furnish the child support from the date of filing for record a certified copy of such decree in the office of the county clerk of each county where any of such property may be situated.

NMSA 1978, § 40–4–15 (Repl.Pamp.1983) (emphasis added). The legislature has provided for immediate enforcement of the lien. *"The liens created by this act* [40–4–12 to 40–4–19 NMSA 1978] *may be satisfied by execution* or may be foreclosed under the same procedure as is now allowed for the foreclosure of judgment liens." NMSA 1978, § 40–4–16 (Repl. Pamp.1983) (emphasis added). Such provisions are consistent with the majority rule.

 The original decree awarding child support is considered a final judgment, even though the court retains continuing jurisdiction. *Smith v. Smith*, 98 N.M. 468,

649 P.2d 1381 (1982); *cf.* NMSA 1978, § 39–1–1. In addition, each installment of child support due is a final judgment for statute of limitations purposes. *Britton v. Britton*, 100 N.M. 424, 671 P.2d 1135 (1983).

 The record does not contain evidence that Mrs. Gonzalez recorded a copy of the amended final decree with the county clerks of the counties where the land is located. Thus, we cannot rely on Section 40–4–15 in analyzing her right to obtain a writ of execution. Failure to prove she acquired a lien, however, is not fatal. NMSA 1978, Section 40–4–19 (Repl.Pamp. 1983) provides, in part, that "[n]othing in Sections 40–4–12 through 40–4–19 NMSA 1978 shall prevent a person or persons entitled to benefits of any decree for alimony or support from enforcing the decree by attachment, garnishment, execution or contempt proceedings as is now provided by statute."

 Other New Mexico statutes provided for execution upon a decree or order, as well as a judgment. *See* NMSA 1978, §§ 39–4–1 to –9.

> The party in whose favor any judgment, order or decree in any court may be returned, shall have execution therefor in conformity to the order, judgment or decree. Said execution may be issued to the sheriff of any county of the state, and levy and sale made in any county wherein the judgment debtor may have property subject to execution.

Section 39–4–1. At common law, execution might issue as soon as the final judgment was signed. *Jackson v. Sears, Roebuck & Co.* This statute is consistent with that rule.

 Because the legislature has made special provision for enforcement of periodic support payments, and because our general statutes governing execution do not modify the common law rule, we conclude our statutes are consistent with the majority rule. Absent a provision in the final decree requiring further proceedings prior to execution, the trial court did not err in

refusing to vacate the judicial sale for lack of a judgment in the sum of the arrearages.

■ Defendant contends that a hearing is necessary to fix the amount due into a lump sum because otherwise, a defendant has no opportunity to challenge the balance due. Such hearings, however, would impose on the other party the burden of converting each unpaid periodic installment to an additional judgment. Under our cases and statutes, such a burden is not contemplated. Furthermore, defendant does have relief at his disposal. He may seek a stay of execution pursuant to NMSA 1978, Civ.P. Rule 62(b) (Repl.Pamp.1980), combined with a motion for relief under NMSA 1978, Civ.P.Rule 60(b)(5) (Repl.Pamp.1980), to obtain relief from a judgment fully or partially discharged or satisfied. *See Hedgecorth v. Hedgecorth.* As a policy matter, we conclude the majority rule is preferable.

We note, however, that New Mexico courts routinely conduct hearings at which accrued arrearages are determined. *See, e.g., Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980); *Corliss v. Corliss,* 89 N.M. 235, 549 P.2d 1070 (1976). A creditor spouse obtains certain advantages by pursuing such a remedy.

A hearing after notice to the debtor provides an opportunity to litigate all claims and defenses and fixes the amount due with certainty. The rules specify the requisite notice. *See* NMSA 1978, Civ.P.R. 5 (Repl.Pamp.1980). In the absence of such a hearing, the notice required by New Mexico law is not certain. *See* NMSA 1978, §§ 39–5–1 to –3 (Orig.Pamp. and Cum. Supp.1984) (providing for notice by publication) and NMSA 1978, §§ 39–4–3, –4 (imposing certain duties on the officer making the levy). Our case law has interpreted these statutes to require demand on the debtor in some circumstances. *See Inman v. Brown,* 59 N.M. 196, 281 P.2d 474 (1955); *Pecos Valley Lumber Co. v. Freidenbloom,* 23 N.M. 383, 168 P. 497 (1917). *Cf.* NMSA 1978, Civ.P.R. 65 (Repl.Pamp.1980) (providing for service of process and a

hearing with respect to certain writs of execution issued by the district court after 1979).

Absent a hearing, the creditor spouse may be required to take additional steps when collecting arrearages in another jurisdiction. *See Brown v. Brown,* 96 Nev. 713, 615 P.2d 962 (1980) (judgment obtained without notice or appearance need not be given full faith and credit; even if enforceable in state where obtained, further hearing required in second state). *Cf. In re Marriage of Wyshak* and *In re Marriage of Crookshanks* (California post-judgment procedures for enforcement, by execution, of judgments providing for installment support payments are reasonable and do not violate due process).

There may be other advantages for the creditor spouse. *See Boyle v. Baggs,* 10 Utah 2d 203, 350 P.2d 622 (1960) (the court observed that even if execution may issue on the basis of a sworn affidavit or similar pleading, a third party purchaser from the debtor spouse may not be bound). Although advantageous for some purposes, however, we cannot hold reduction of child support arrearages to judgment was necessary prior to execution. *See In re Marriage of Wyshak.* The trial court did not err in refusing to find that the judicial sale was invalid for lack of a judgment in the sum of the arrearages.

## SUFFICIENCY OF NOTICE

Defendant also contends he did not receive sufficient notice of the sale to satisfy constitutional due process requirements. This contention has two parts: (1) he was entitled to personal service, and (2) the notice on which plaintiffs rely was insufficient. We need not decide whether, had the arrearages been reduced to judgment, further notice would have been required prior to sale. *See Endicott Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924) (due process did not require that a judgment debtor be given additional notice and opportunity to be heard after judgment had been rendered). *See generally* M. Greenfield, *A Constitutional Limitation on the En-*

*forcement of Judgments—Due Process and Exemptions,* 1975 Wash.U.L.Q. 877.

 For purposes of this appeal, we have assumed Mrs. Gonzalez executed on the 1959 decree without further action. Under these circumstances, because defendant had no prior opportunity to raise any defenses, due process required notice and an opportunity to be heard prior to the sale. *See In re Marriage of Wyshak; In re Marriage of Crookshanks. Cf. Griffin v. Griffin* (where New York law gave the debtor spouse an opportunity to raise defenses prior to entry of judgment for arrearages, a judgment rendered without notice denied him due process). *See generally* D. Dunham, *Post-Judgment Seizures: Does Due Process Require Notice and Hearing?,* 21 S.D.L.Rev. 78 (1976). Constitutional due process clearly requires that before defendant is finally deprived of his property, a hearing must be provided on the relevant issues, including his default, the existence of a lien, and the extent of his interest in the property. U.S. Const. amend. XIV § 1. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). *See also* Civ.P.R. 65.

 We assume without deciding that the relevant statutory procedures sufficiently accomodate the conflicting interests of the parties for purposes of the due process clause. *See Mitchell v. W.T. Grant Co.* Due process considerations are flexible; a particular resolution of conflicting interests depends upon the situation. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (establishing procedural requirements for parole revocation hearings); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (establishing due process requirements in connection with the suspension of a student from public school for disciplinary reasons). *See also Bilbao v. Bilbao,* 102 N.M. 406, 696 P.2d 494 (Ct.App.1985). The circumstances of the cases dictate the requirements. *Id.* The notice and opportunity to be heard must precede a deprivation of property and must be appropriate to the nature of the case. *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The parties have not argued the statutory procedures are defective. Having concluded that notice was required, the remaining appellate issue is whether summary judgment was appropriate.

An opportunity to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Therefore, "[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

 Where personal jurisdiction is obtained before the original decree was obtained, renewed personal service is not required. *See Sevison v. Sevison,* 396 A.2d 178 (Del.Super.1978); *Zelek v. Brosseau,* 47 N.J.Super. 521, 136 A.2d 416 (1957); *LoCascio v. LoCascio,* 101 Misc.2d 679, 421 N.Y.S.2d 807 (1979). The defendant must be given reasonable notice and an opportunity to be heard, and personal service outside the jurisdiction will suffice. *Zelek v. Brosseau.* Service of notice by mail can be sufficient. *LoCascio v. LoCascio; Varone v. Varone,* 296 A.2d 174 (D.C.App.1972). *See also* Civ.P.R. 5. A letter may satisfy the requirement. *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 112, 1 L.Ed.2d 178 (1956). The letter may be mailed to a defendant's last-known address. *See Thompson v. Thompson,* 99 N.M. 473, 660 P.2d 115 (1983); *LoCascio v. LoCascio.* A letter sent to the wrong address, however, if the proper address were known or easily ascertainable, would not satisfy due process. *See Mullane v. Central Hanover Bank & Trust Co. Cf. LoCascio v. LoCascio* (where plaintiff did not know defendant's home address, but had only his post office box address, and defendant received

the notice but refused to accept, court found sufficient notice).

In deciding a summary judgment motion, the court must view all matters presented and considered by it in the most favorable aspect they will bear in support of the right to a trial on the issues, and all reasonable inferences must be construed in favor of the party against whom summary judgment is sought. *Montoya v. City of Albuquerque*, 82 N.M. 90, 476 P.2d 60 (1970). Summary judgment is not used to decide an issue of fact, but to determine if one exists. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). Even where basic facts are undisputed, if equally logical but conflicting inferences can be drawn from the facts, summary judgment should be denied. *Tinley v. Davis*, 94 N.M. 296, 609 P.2d 1252 (Ct. App.1980).

In the present case, plaintiffs' evidence indicated that letters were mailed to defendant prior to the sale. Mr. Weinbrenner's affidavit stated that on July 10, 1969, he wrote to defendant, advising him of the levy on the real estate. A copy of the letter and of the notice of levy sent to defendant were attached to the affidavit. Mr. Weinbrenner's affidavit also stated that on November 6, 1969, the sheriff to whom the alias execution was issued wrote to defendant. The sheriff's letter, a copy of which was attached to the affidavit, advised defendant of the levy and of his statutory right to select an appraiser. *See* NMSA 1978, § 39–5–7.

Defendant alleged, however, that although Mrs. Gonzalez knew his correct address, that address was not the one to which notice was mailed. As evidence, he introduced receipts from several child support payments made to Mrs. Gonzalez at the approximate time notice was mailed. These receipts documented the address he claims. Although this address is contested, defendant's testimony raises a factual dispute as to whether notice was mailed to his last known address.

Even if the letters reached defendant, we note that neither letter specifically advised

him of an opportunity to be heard and to contest execution. Absent a factual record, the adequacy of the notice for due process purposes cannot be determined. *See Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (actual notice of relevant facts did not alert person affected by city's action of right to be heard on claim for compensation); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (final notice of utility service inadequate to inform of notice of opportunity to be heard).

In the present case, defendant was aware of the original suit and should have been aware that his former wife might execute on the judgment. *See Endicott Johnson Corp. v. Encyclopedia Press, Inc. Cf. Schroeder v. City of New York; Memphis Light, Gas & Water Division v. Craft*. The writ of garnishment, however, also affected his interest in the property. Defendant's affidavit contended that he believed Mrs. Gonzalez' interest in the estate resulted from the garnishment action. Plaintiffs' evidence of defendant's actual knowledge is not inconsistent with that contention.

In addition, defendant's affidavit indicates he had served a month in jail in California, beginning October 24, 1969, as a result of a hearing on an order to show cause in California. The record also indicates that some child support payments were made through Orange County, California officials. The writ of execution issued for a sum less than that which appeared to be due according to the Dona Ana County records. Under these circumstances, it is possible that plaintiffs knew or should have known defendant's actual residence.

We hold genuine issues of material fact precluded summary judgment. On remand the trial judge should determine whether the notice on which plaintiffs rely was sufficient: whether the notice was mailed to defendant's last known address and whether it was adequate to inform

him, under the circumstances of this case, of the pending sale and to give him an adequate opportunity to present any available defenses.

## OTHER GROUNDS FOR AFFIRMANCE

We do not consider plaintiffs' alternative claims that defendant's motion was barred by the doctrines of waiver, estoppel, laches, unclean hands, and adverse possession. The trial court did not rely on these theories, and it does not appear that a ruling of the trial court was invoked. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). Plaintiffs did not cross-appeal. *See Whorton v. Mr. C's*, 101 N.M. 651, 687 P.2d 86 (1984); *Adams v. Thompson*, 87 N.M. 113, 529 P.2d 1234 (Ct.App.1974). At the present time, the record does not permit this court to rule on these claims.

## CONCLUSION

We reverse the granting of summary judgment as to plaintiffs in the quiet title action and the denial of defendant's motion to vacate in the judicial sale. We remand for further proceedings, including hearing further evidence on the issue of notice, prior to a decision on defendant's motion to vacate the judicial sale. No costs are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.